# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| US BANK, N.A.,<br><br>                    Plaintiff,<br><br>          vs.<br><br>SFR INVESTMENTS POOL 1, LLC et al.,<br><br>                    Defendants. | 3:15-cv-00241-RCJ-WGC<br><br>**ORDER** |

This case arises out of a homeowners' association ("HOA") foreclosure sale.  Pending before the Court are a motion to dismiss and three motions for summary judgment.

## I.      FACTS AND PROCEDURAL HISTORY

Plaintiff US Bank, N.A. became the successor beneficiary of a $236,000 promissory note (the "Note") and first deed of trust (the "DOT") encumbering real property at 2546 Napoli Dr., Sparks, NV 89434 (the "Property") on October 7, 2013. (Compl. ¶¶ 2, 6–19, ECF No. 1).  Four months earlier, on June 6, 2013, Defendant D'Andrea HOA ("D'Andrea") had sold the Property to Defendant SFR Investments Pool 1, LLC ("SFR") for $9,000 at a non-judicial HOA foreclosure sale. (*Id.* ¶¶ 31–32).  Prior to the sale, counsel for US Bank's predecessor-in-interest had tendered the $288 superpriority piece of D'Andrea's lien to D'Andrea's counsel, Defendant Alessi & Koenig, LLC ("Alessi"), but Alessi had rejected the tender. (*Id.* ¶¶ 24–30).  Defendant

Siena HOA ("Siena") (a sub-HOA of D'Andrea) and its agent, Defendant The Clarkson Law Group, P.C. ("Clarkson"), later initiated a subsequent non-judicial HOA foreclosure based on SFR's own delinquency in paying HOA assessments to Siena.

US Bank sued SFR, D'Andrea, Alessi, Siena, and Clarkson in this Court for: (1) quiet title; (2) a preliminary injunction; (3) wrongful foreclosure; (4) negligence; (5) negligence per se; (6) breach of contract; (7) misrepresentation; (8) unjust enrichment; and (9) breach of the covenant of good faith and fair dealing.  SFR answered and counterclaimed for declaratory relief that D'Andrea's June 6, 2013 foreclosure sale extinguished the DOT under Nevada Revised Statutes section ("NRS") 116.3116.

Clarkson moved to dismiss the single claim against it for a preliminary injunction, and Siena separately moved to dismiss the quiet title and preliminary injunction claims for failure to state a claim.  US Bank moved to dismiss SFR's Counterclaim and for a preliminary injunction preventing Siena and its agents (including Clarkson) from selling the Property.  The Court denied Clarkson's and Siena's motions to dismiss but granted US Bank's motion to dismiss the Counterclaim, with leave to amend.  The Court consolidated US Bank's preliminary injunction motion with a trial on the merits as to the single question of the superpriority amount of Siena's lien against the Property.  US Bank stipulated to dismiss as against Clarkson and Siena when they released the lien and rescinded the notice thereof.

SFR filed the Amended Counterclaim ("ACC"), and US Bank has moved to dismiss it for failure to state a claim or, in the alternative, for summary judgment, and SFR filed a countermotion for summary judgment.  US Bank and SFR have filed additional cross motions for summary judgment as to US Bank's claims.

///

## II.     LEGAL STANDARDS

### A.     Dismissal for Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  That is, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a

cognizable legal theory (*Conley* review), but also must allege the facts of his case so that the court can determine whether the plaintiff has any basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review).  Put differently, *Conley* only required a plaintiff to identify a major premise (a legal theory) and conclude liability therefrom, but *Twombly-Iqbal* requires a plaintiff additionally to allege minor premises (facts of the plaintiff's case) such that the syllogism showing liability is logically complete and that liability necessarily, not only possibly, follows (assuming the allegations are true).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**B.      Summary Judgment**

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme.  The moving party must first satisfy its initial burden.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## III.   ANALYSIS

### A.   SFR's Counterclaim

The previous flaw in the Counterclaim was SFR's failure to allege that US Bank or its predecessor-in-interest had been given constitutionally reasonable notice of D'Andrea HOA's

foreclosure sale.  In summary, the Court could not under the Fifth Amendment and *Shelley v. Kraemer*, 334 U.S. 1 (1948) issue a declaration or injunction validating a foreclosure sale against an entity that would be entitled to constitutionally reasonable notice had the sale itself constituted state action without an allegation (and later proof) of facts indicating that constitutionally reasonable notice of the sale had been given. *See US Bank, N.A. v. SFR Invs. Pool 1, LLC*, 124 F. Supp. 3d 1063, 1075–81 (D. Nev. 2015).  The Court therefore dismissed the Counterclaim with leave to amend to allege such facts.

The ACC contains a single relevant allegation that incorporates some attached documents by reference. (*See* Am. Countercl. ¶ 9, ECF No. 76 ("[T]he disclosed documents by Alessi, as agent for the Association, indicate that the . . . Notice of Sale [was] mailed to the predecessors of the [sic] US Bank . . . .")).  A footnote to paragraph nine cites the attached "disclosed documents." (*See id.* ¶ 9 n.1).  The first attached document is a copy of the recorded Notice of Default ("NOD"). (*See* NOD, ECF No. 76-1, at 2).  Second is a "Transaction Report" indicating various mailings of the NOD. (*See* Transaction Report, ECF No. 76-1, at 4).  Third is a copy of the recorded Notice of Sale ("NOS"). (*See* NOS, ECF No. 76-1, at 7).  Fourth is a copy of a list of parties and addresses along with certified mail receipts, with a caption at the bottom stating "NOTS MAILINGS." (*See* Sheet, ECF No. 76-1, at 9).  US Bank is not listed, but First Franklin and Mortgage Electronic Registration Systems, Inc. ("MERS") are, and the receipts indicate mailings on March 9, 2013. (*See id.*).  Last is an affidavit of service as to the mortgagor. (*See* Vidovic Aff., ECF No. 76-1, at 12).

The evidence attached to and incorporated into the ACC that might prevent dismissal here is the evidence showing that Alessi mailed First Franklin and MERS copies of the NOS before the sale.  The evidence that First Franklin was mailed a copy of the NOS is insufficient to

allege proper notice, however, given the fact that publicly available documents at the time of the

mailing showed that First Franklin itself was no longer the beneficiary of the Note, so it cannot

have been constitutionally reasonable to have given First Franklin notice and not the assignee

mortgagee.  At the time of the mailing, the publicly available records indicated that the

beneficiary of the loan was not First Franklin or MERS, but "U.S. BANK, N.A., SUCCESSOR

TRUSTEE TO BANK OF AMERICA, N.A., AS SUCCESSOR TRUSTEE TO LASALLE

BANK, N.A., AS TRUSTEE FOR THE HOLDERS OF THE MERRILL LYNCH FIRST

FRANKLIN MORTGAGE LOAN TRUST, MORTGAGE LOAN ASSET-BACKED

CERTIFICATES, SERIES 2007-FF1." (*See* Assignment, Aug. 17, 2011, ECF No. 43-1, at 32

(recorded August 30, 2011)).

It was still possible that MERS was the beneficiary of the DOT itself and therefore that

mailing the NOS to MERS might have been sufficient.  The DOT in this case had split the

beneficial interests in the note and the DOT between First Franklin and MERS, respectively. (*See*

DOT, ECF No. 43-1, at 6).  The Nevada Supreme Court had already ruled at the time of the NOS

mailings that such a split was contractually possible. *See Edelstein v. Bank of N.Y. Mellon*, 286

P.3d 249, 259 (Nev. 2012).  If MERS still had the beneficial interest in the DOT at the time of

the foreclosure sale, or perhaps simply when the NOS was mailed, then the allegation of having

mailed the NOS to MERS would probably be sufficient to allege constitutionally reasonable

notice, because MERS would have been the apparent beneficiary of the security interest to be

extinguished at the sale.  The beneficiary of the note alone could not be aggrieved, because it did

not possess an interest in the DOT and therefore stood to lose no legal rights via the HOA sale.

But a split between the beneficial interests in a note and DOT is repaired if a single entity later

obtains both the note and the security. *Id.* at 259–60.  In *Edelstein*, as is typical, the split was

repaired when MERS later assigned its interest in the DOT, together with any interest thereby secured, to a single entity. *See id.* at 260.  And, as the publicly available records showed at the time of the NOS mailings in this case, that is precisely what happened as to the Property here in 2009 when MERS assigned its beneficial interest in the DOT along with First Franklin's beneficial interest in the note to "LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR FIRST FRANKLIN MORTGAGE LOAN TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2007-FF1." (See Assignment, Jan. 9, 2009, ECF No. 43-1, at 28 (recorded February 2, 2009)).  An allegation of having mailed the NOS to MERS in this case is therefore not sufficient to allege constitutionally sufficient notice to the assignee mortgagee.  The publicly available records made clear that US Bank, as successor trustee of a mortgage backed security, held the beneficial interests in both the note and the DOT at the time the NOS was mailed.

US Bank attaches its own evidence, beginning with the affidavit of Miles Bauer, who testifies that his firm was retained to tender payments to HOAs to satisfy superpriority liens against properties, including the Property. (*See* Bauer Aff. ¶ 4, ECF No. 79-1).  Bauer attaches four exhibits to his declaration (his affidavit and the four exhibits thereto together constitute Exhibit 1 to the ACC).  First is a copy of the Statement of Account and Payoff Demand from Alessi that he received before the sale. (Statement, ECF No. 79-1, at 6).  Second is a copy of an April 18, 2013 letter from an attorney at Bauer's firm to Alessi in which the firm argued that the collection costs listed in the Statement belonged in the subpriority portion of the lien, not the superpriority portion, enclosing a cashier's check in the amount of $288 (the maximum nine month's worth of delinquent assessments that could constitute the superpriority portion of the lien). (*See* Jung Letter, ECF No. 79-1, at 13).  Third is a memorandum signed by two Alessi

employees indicating receipt of that check. (*See* Mem., ECF No. 79-1, at 17).  Fourth is a screen shot of the firm's records indicating that Alessi had returned the check uncashed. (*See* Bauer Aff. ¶ 9; Screen Shot, ECF No. 79-1, at 19).   The letter, memorandum, and screen shot are evidence which if unrebutted would possibly entitle US Bank to defensive summary judgment as to the ACC and even offensive summary judgment on its own claims because it is evidence that the superpriority portion of the lien was tendered to Alessi prior to D'Andrea's HOA sale and that Alessi rejected the tender, *see Shadow Wood Homeowners Assoc., Inc. v. N.Y. Cmty. Bancorp, Inc.*, 132 Nev. Adv. Op. 5, 2016 WL 347979, at *4–6 (Nev. 2016), but the Court will simply dismiss the ACC, and no offensive summary judgment motion is before the Court.

In summary, none of the evidence attached to and incorporated into the ACC tends to show that notice of D'Andrea's HOA sale was mailed or otherwise delivered to US Bank (the beneficiary of both the Note and DOT at the time) in any form.  In any case, the Court of Appeals has recently ruled that the statutory notice scheme under Chapter 116 is facially unconstitutional under the Due Process Clause of the Fourteenth Amendment. *See Bourne Valley Ct. Tr. v. Wells Fargo Bank, N.A.*, No. 15-15233 (9th Cir. 2016).  The Court therefore grants the motion to dismiss the ACC.  The Court also denies the countermotion for summary judgment, as the evidence attached thereto also does not tend to show that notice of D'Andrea's HOA sale was mailed or otherwise delivered to US Bank in any form (the only evidence of mailings is the same evidence attached to the ACC), and SFR has therefore not satisfied its initial burden.

### B.    US Bank's Motion for Summary Judgment on its Own Claims

US Bank has moved for offensive summary judgment based on: (1) insufficient statutory notice; (2) tender of the superpriority piece of D'Andrea's HOA lien before sale; and (3) and commercial unreasonableness of the sale.  The Court notes as an initial matter that only the quiet

title claim is implicated by these issues.  The claim for a preliminary injunction is a prayer for

relief, not an independent cause of action.  The wrongful foreclosure claim can succeed only

upon a showing that not only the superpriority piece of the HOA lien, but also the subpriority

piece, was redeemed prior to the sale such that there was no default at all supporting foreclosure,

facts that US Bank does not appear to allege.  Finally, the claims for negligence, negligence per

se (which is also not an independent cause of action but a legal theory relevant to the negligence

claim), breach of contract, misrepresentation, unjust enrichment, and breach of the covenant of

good faith and fair dealing are not affected by the issues argued in the present motion.

### 1.      Statutory Notice Under NRS 116.31163

NRS 116.31163 requires a notice of default and election to sell ("NOD") issued by an

HOA to be sent by first class mail within 10 days of recordation to: (1) those who have requested

notice under NRS 116.31168 or 107.090; (2) any holder of a recorded security interest who has

notified the foreclosing HOA 30 days prior to the recordation of the NOD of the existence of its

security interest; and (3) certain purchasers of the unit. *See* Nev. Rev. Stat. § 116.31163.  As to

lienors of record like US Bank, NRS 116.31163 therefore operates as an opt-in system.  Also,

NRS 116.31168 states, "The provisions of NRS 107.090 apply to the foreclosure of an

association's lien as if a deed of trust were being foreclosed.  The request must identify the lien

by stating the names of the unit's owner and the common-interest community." *Id.* § 116.31168.

NRS 107.090 in turn requires notice by certified or registered mail, return receipt

requested, of the NOD and "notice of time and place of sale" ("NOS") in a traditional non-

judicial foreclosure sale to any junior lienor of record. *See id.* § 107.090(3)–(4).  That might

appear at first glance to require mailing of the NOD and NOS in an HOA sale to any junior

lienor of record, such as a first deed of trust holder, but the Nevada Supreme Court has not so

read the statute.  Although the Nevada Supreme Court has noted that NRS 107.090 is incorporated by NRS 116.31168(1), when specifically citing to NRS 107.090(3), it has concluded that notice to a first deed of trust holder in an HOA foreclosure still requires the first deed of trust holder to have notified the HOA of its interest before the recordation of the NOD under NRS 116.31163, which shows that the Nevada Supreme Court either reads NRS 116.31168 not to incorporate the automatic notice provisions of NRS 107.090(3) or that it reads the opt-in provision of NRS 116.31163 to supersede NRS 107.090(3)'s automatic notice provisions as to HOA foreclosures even if NRS 107.090 is otherwise incorporated into Chapter 116 foreclosures generally via NRS 116.31168. *See U.S. Bank., N.A. v. SFR Invs. Pool 1, LLC*, 124 F. Supp. 3d 1063, 1078–80 (D. Nev. 2015) (Jones, J.) (citing *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 411 (Nev. 2014)).  Another possibility is that the Nevada Supreme Court simply (and very sensibly) reads NRS 107.090(3)'s requirement that notice be sent to "[e]ach other person with an interest whose interest or claimed interest is subordinate to the deed of trust," not to require notice to deed of trust holders in HOA sales, because an interest in a deed of trust is not subordinate to itself.  In any case, it is clear that a deed of trust holder must opt in under NRS 116.31163 to be statutorily entitled to receive a NOD by mail.[1]  It is for this reason that the Court of Appeals has ruled that the notice scheme is facially invalid under the Due Process Clause of the Fourteenth Amendment. *See Bourne Valley Ct. Tr. v. Wells Fargo Bank, N.A.*, No. 15-15233 (9th Cir. 2016).

---

1 A recent amendment to NRS 116.31163 applicable to foreclosures where the NOD is recorded on or after October 1, 2015 requires certified mail of a copy of the NOD to all lienors of record whose liens were recorded prior to the recordation of the NOD. *See* S.B. 306 §§ 3, 9(1), 2015 Leg., 78th Sess. (Nev. 2015).  The very need for this amendment indicates that the Nevada Legislature perceived that the pre-amendment version of the statute did not require such notice.

Although the issue is moot because the opt-in procedure is unconstitutional, the Court denies summary judgment to US Bank under this statute, because US Bank has not satisfied its initial burden to produce any evidence that it opted-in to receive a NOD.  US Bank cites to the section of the Nevada Revised Statutes concerning mailing of the NOD but complains it received no mailing of the NOS.  The result is the same however. *Compare* Nev. Rev. Stat. § 107.090(3), *with id.* § 107.090(4).  In order to be statutorily entitled to receive either the NOD or the NOS, US Bank had to opt in, *see U.S. Bank., N.A.*, 124 F. Supp. 3d at 1078–80 (citing *SFR Invs. Pool 1, LLC*, 334 P.3d at 411), and there is no evidence adduced that it did.  The Court therefore denies offensive summary judgment to US Bank on the quiet title claim based on D'Andrea's or Alessi's alleged noncompliance with NRS 116.31163.

The Court, however, grants offensive summary judgment to US Bank on the quiet title claim under the Due Process Clause of the Fourteenth Amendment because Chapter 116's notice scheme is facially unconstitutional.  The Court previously rejected US Bank's Fourteenth Amendment challenge because the Court of Appeals had ruled that the non-judicial foreclosure scheme under Chapter 107 did not implicate state action. *See Charmicor v. Deanor*, 572 F.2d 694, 695–96 (9th Cir. 1978).  The Court of Appeals has since ruled, however, that Chapter 116 foreclosures constitute state action in a way that Chapter 107 foreclosures do not. *See Bourne Valley Ct. Tr. v. Wells Fargo Bank, N.A.*, No. 15-15233 (9th Cir. 2016).

### 2.   Tender of the Superpriority Piece of Defendant's Lien

As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece.  The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust.  The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

*See SFR Invs. Pool 1, LLC*, 334 P.3d at 411.  The superpriority piece does not include collection costs. *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 132 Nev. Adv. Op. 35, 2016 WL 1704199, at *6 (Nev. 2016).[2]

US Bank has adduced evidence that on or about April 18, 2013, its predecessor-in-interest's agent Miles, Bauer, Bergstrom & Winters, LLP ("Miles Bauer") tendered a check to D'Andrea's agent Alessi for $288, which was nine months' worth of regular assessments. (*See* Miles Aff. ¶¶ 7–8, ECF No. 121-3; Owner Ledger, ECF No. 121-3, at 8 (indicating monthly assessments of $32.00); Check, ECF No. 121-3, at 15 ($288.00 for "HOA fees"); Alessi's Confirmation of Receipt of Check, Apr. 19, 2013, ECF No. 121-3, at 17).  US Bank has therefore satisfied its initial burden to produce evidence that if unrebutted would entitle it to a directed verdict on the issue of whether the superpriority piece of the lien was redeemed prior to the June 6, 2013 sale.  SFR has not adduced any contrary evidence in response to satisfy its shifted burden.  It has only attacked Miles's credibility based on his trial testimony in an unrelated case, but credibility is not an issue at summary judgment, only the existence of admissible evidence tending to show or disprove elements of claims.  SFR does not adduce, for example, the declaration of any Alessi employee that the tender for which US Bank had provided evidence was not in fact made.  The Court does not find any of the evidence adduced by US Bank to be inadmissible.  Because the tender of the superpriority piece prevented the extinguishment of the DOT at the sale, the Court grants summary judgment to US Bank on the quiet title claim.

///

///

---

2 An amendment to the statute effective October 1, 2015 (after the events at issue in the present case) added certain fixed collection costs to the superpriority piece. *See* Nev. Rev. Stat. § 116.3116(3)(c), (5) (2015).

### a.      Tender Equals Payment

Tender occurs when a party makes an amount available without conditions. *Tender*, Black's Law Dictionary 1696 (10th ed. 2014) ("1. A valid and sufficient *offer* of performance; specif., an *unconditional offer of money* or performance . . . ." (emphases added)).  The case law is in accord. *See, e.g.*, *Walker v. Houston*, 12 P.2d 952, 953 (Cal. 1932) ("'Tender' is an offer of performance, not performance itself.").  There is no genuine dispute that the full superpriority piece was tendered prior to the sale.  The check tendered was an unconditional order to pay money; that is part of the very definition of a check under the law of commercial paper. *See* Nev. Rev. Stat. § 104.3104.  SFR does not appear to argue that Alessi did not receive the check or that the check was defective.  It only argues that the check was a conditional payment.  But a reasonable jury could not interpret the evidence that way.  The check was an unconditional order to pay money, permitting Alessi (on behalf of D'Andrea) to immediately demand and receive money from the draftee in the amount indicated on the check without any further action or consent by Miles Bauer (on behalf of US Bank's predecessor-in-interest).

### b.      Tender Immediately Extinguishes a Lien, Even if Rejected

It was settled law before Nevada even became a state that timely and complete tender immediately discharges a lien against real property, even if the tender is rejected, although the lienor remains entitled to repayment of the debt. *See Kortright v. Cady*, 21 N.Y. 343 (1860); *id.* at 347 (opinion of Davies, J.) ("The rule in England was therefore ancient and well settled, that [timely] payment . . . extinguished the interest of the mortgagee in the lands mortgaged; and tender and refusal at the same time produced the same result. . . . Tender and refusal are equivalent to performance."); *id.* at 366 (opinion of Comstock, C.J.) ("We have, then, only to apply an admitted principle in the law of tender, which is, that tender is equivalent to payment as

to all things which are incidental and accessorial to the debt.  The creditor, by refusing to accept, does not forfeit his right to the very thing tendered, but he does lose all collateral benefits or securities.").  The rule can cause no unfair detriment to a lienor:

> If the mortgagor does not tender the full amount due, the lien of the mortgage is not extinguished.  The mortgagee runs no risk in accepting the tender.  If it is the full amount due, his mortgage lien is extinguished and his debt is paid.  This is all he has a right to demand or expect, and all he can in any contingency obtain.  His acceptance of the money tendered, if inadequate and less than the amount actually due, only extinguishes the lien *pro tanto*, and the mortgage remains intact for the residue.  A much greater hardship might be imposed, and serious injury be produced, by holding that the mortgagor cannot extinguish the lien of the mortgage by a tender of the full amount due.  It has never occurred to any judge to argue that a pawnee was in great peril, and in danger of losing the benefit of his pawn, by the enforcement of the well settled rule, that a tender of the amount of the loan and interest, and refusal, extinguished the lien on the pawn.  Littleton well says, that it shall be accounted a man's own folly that he refused the money when a lawful tender of it was made to him.  The only effect upon the rights of the mortgagee is, that the land or thing pledged is released from the lien, but the debt remaineth.

*Id.* at 354 (opinion of Davies, J.).  The sole dissenting justice in *Kortright* disagreed only as to whether a mortgagor whose tender made after the day designated in the mortgage (but still before sale) is rejected must maintain his willingness and ability to perform in order to maintain the right of redemption to the point of sale, none of which is at issue in the present case; he agreed that a timely tender immediately discharges a lien, whether accepted or rejected. *See id.* at 368 (Welles, J., dissenting) ("If a tender has the effect in any case to release the lien, it produces that effect the moment it is made, whether accepted or refused.  If accepted, it is a payment; if refused, it is the folly of the holder of the mortgage, and the lien is gone and cannot be restored by his subsequent change of mind and offer to receive the money tendered.").

By statute, the common law of England is the default common law in Nevada absent conflict with federal or state law. Nev. Rev. Stat. § 1.030.  The Court is aware of no state or federal law in conflict with the ancient English common law rule recognized in *Kortright*.  Nor is

there any basis to believe the Nevada Supreme Court would change course today.  The high

courts of other states to consider the issue have reaffirmed the rule, as the modern commentators

have noted. *See, e.g.*, *Leet v. Armbruster*, 77 P. 653, 671–72 (Cal. 1904) (citing *Kortright*, 21

N.Y. 343); *Kelley v. Clark*, 129 P. 921, 924 (Idaho 1912) (collecting cases); 12 David A.

Thomas, *Thompson on Real Property* § 101.03(d), at 416 (2008) (collecting cases) ("A timely,

but rejected, tender of the debt discharges a mortgage while leaving the debt itself enforceable as

an unsecured obligation.").  Only the Supreme Court of Oklahoma appears to have cited

*Kortright* negatively in any sense, ruling that under the principle that "he who seeks equity must

do equity" a mortgagor whose tender had been rejected could not invoke *Kortright* to quiet title

to real property via his own action without offering to pay the underlying debt into court. *See*

*First Nat'l Bank of Ada v. Elam*, 258 P. 892, 899–900 (Okla. 1927).  Even if the Nevada

Supreme Court would agree, Plaintiff here is surely willing and able to do equity as to the

previously rejected superpriority piece of the lien.  There is no reason to think the Nevada

Supreme Court would disagree with the general principle that tender immediately extinguishes a

lien even if rejected—a point of law noted in *Kortright* as well settled since before the Civil

War—especially where the Restatement is in agreement.  The Nevada Supreme Court has

typically followed the Restatement in related contexts in recent years. *See, e.g.*, *In re Montierth*,

354 P.3d 648, 651 (Nev. 2015).  The Restatement suggests that not only does a timely,

unconditional tender discharge a lien, but also that upon such a tender the lienor must provide an

appropriate document indicating that the lien has been released. *See* Restatement (Third) of

Property (Mortgages) § 6.4(c) & cmt. c (1997).  In the present context, that would appear to

mean that an HOA has a duty both to accept a tender of the superpriority piece and to provide a

document confirming that the superpriority piece has been satisfied and/or that the remainder of its lien is not in priority to the DOT. *See id.*

### c.     Where the Superpriority Piece is Tendered Prior to Sale, a First Deed of Trust Survives the Sale

The Restatement is in accord with the case law that rejection of a tender is of no effect: "[A] mortgage is extinguished by mere *tender* of full payment by the person primarily responsible for payment, even if the mortgagee rejects it." *Id.* § 6.4 cmt. d.[3]  As to the issue of whether a first deed of trust survives an HOA sale, it doesn't matter whether a first mortgagee who tenders the superpriority piece is a person "primarily responsible for payment."  The Uniform Common Interest Ownership Act, as adopted via Chapter 116, contemplates that payment of the superpriority piece by a first deed of trust holder protects a first deed of trust, because the entire purpose of the superpriority rule is to ensure that HOAs quickly recover the superpriority piece by pressuring first deed of trust holders into paying the superpriority piece before foreclosure on pain of losing a comparatively large security interest. *See SFR Invs. Pool I, LLC*, 334 P.3d at 413 ("As a practical matter, secured lenders will most likely pay the [nine] months' assessments demanded by the association *rather than having the association foreclose on the unit*." (quoting 1994 & 2008 UCIOA § 3–116 cmt. 2) (alteration in original)).  The Uniform Law Commission's Joint Editorial Board for Uniform Real Property Acts has itself opined that if the superpriority piece is redeemed prior to the HOA sale, the sale proceeds only on the subpriority piece and transfers title subject to the first mortgage. *See* Joint Editorial Board

---

3 Not only does tender extinguish the relevant lien, but in the view of the Restatement the wrongful rejection of a tender gives rise to a damages action for the costs of any resulting inconvenience: "[T]he tender of full payment *per se* relieves the real estate of the mortgage lien[, and] the mortgagee who wrongfully refuses a tender may be held liable for damages flowing from any unreasonable delay that results in clearing the mortgage from the real estate's title." *Id.*

1   Report 12, *available at* http://www.uniformlaws.org/shared/docs/jeburpa/2013jun1_JEBURPA_

2   UCIOA%20Lien%20Priority%20Report.pdf.  The Nevada Supreme Court cited this very report

3   in approval in *SFR Investments Pool 1*. *See* 334 P.3d at 413–14 & n.4.

4          The Restatement confirms that "primary responsibility does not necessarily imply

5   personal liability" but turns on whether one stands to lose something via foreclosure. *See*

6   Restatement (Third) of Property (Mortgages) § 6.4 cmt. a.  Even if not "primarily responsible for

7   payment," a first deed of trust holder's tender of the superpriority piece subrogates the

8   superpriority piece to the first deed of trust holder by operation of law. *See id.* cmt. g; *see also,*

9   *e.g.*, *Mosher v. Conway*, 46 P.2d 110, 112–13 (Ariz. 1935).  Regardless of whether the

10   superpriority piece is extinguished or subrogated to the first deed of trust holder upon the first

11   deed of trust holder's tender thereof, where such a tender has occurred an HOA sale proceeds

12   only on the subpriority piece, and the first deed of trust is not thereby extinguished. *See*

13   Restatement (Third) of Property (Mortgages) § 6.4 cmt. g.  ("[R]edemption by the holder of a

14   junior interest in the real estate operates in essentially the same manner as redemption by one

15   who is primarily responsible for the obligation.").

16          In summary, the principles of the case law and the Restatement as applied to the present

17   case means that although D'Andrea remains entitled to the superpriority piece, US Bank's

18   predecessor-in-interest's tender of the superpriority piece before the HOA sale either

19   extinguished or subrogated the superpriority piece of D'Andrea's lien such that the DOT, which

20   was in priority to the remaining subpriority piece on which the foreclosure proceeded, survived

21   the sale.  The Court finds that there is no genuine dispute that the sale in this case proceeded

22   purely on the subpriority piece of D'Andrea's lien, and the foreclosure of a lien junior to the

23   DOT cannot have extinguished it.  US Bank is therefore entitled to summary judgment on its

24

claim for a declaration that D'Andrea's sale did not extinguish the DOT.  The Nevada Supreme Court recently ruled similarly in an unreported order. *See Stone Hollow Ave. Tr. v. Bank of Am., N.A.*, No. 64955, (Nev. Aug. 11, 2016) (affirming the district court's ruling that rejection of a tender of the superpriority piece of an HOA lien extinguished the superpriority piece such that the foreclosure proceeded on the subpriority piece only and the deed of trust survived the sale).

The Court finds that there is no genuine dispute that the sale in this case proceeded purely on the subpriority piece of D'Andrea's lien, and the foreclosure of a lien junior to the DOT cannot have extinguished it.  US Bank is therefore entitled to summary judgment on its claim for a declaration that D'Andrea's sale did not extinguish the DOT.  And for reasons given, *infra*, SFR cannot be said to have been a bona fide purchaser for value as against the DOT.  The Court also grants summary judgment to US Bank on that issue.

### 3.     Commercial Unreasonableness

The Court will not rule on the merits under *Shadow Wood Homeowners Ass'n, Inc. v. N.Y. Cmty. Bancorp, Inc.*, 366 P.3d 1105 (Nev. 2016) (gross inadequacy of sale price plus fraud, oppression, or unfairness) or *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917 (Nev. 1977) (commercial unreasonableness of the sale).  If necessary to resolve as between US Bank and SFR, the Court would likely put the issues to a jury.  US Bank is, however, entitled to summary judgment on these issues as against D'Andrea and Alessi, as they have admitted commercial unreasonableness. (*See* Mag. J. Order 2, ECF No. 113; Requests for Admission to D'Andrea, ECF No. 104-2, at 55; Requests for Admission to Alessi, ECF No. 104-1, at 7).

///

///

///

1       **C.      SFR's Motion for Summary Judgment against US Bank's Claims**

2       **1.      BFP Status**

3       SFR argues it is a bona fide purchaser for value without notice ("BPF"), and that the

4       Court should therefore rule that it took title free of the DOT.  A BFP is a person who pays money

5       for real property before obtaining notice of an earlier interest in the property. 5 Tiffany Real

6       Property § 1262 & n.39.50 (3rd ed. 2015).  The traditional common law rule of competing

7       interests in real property is "first in time, first in right." 11 Thomas, *supra*, § 92.03, at 97 (citing

8       Ralph W. Aigler, *The Operation of the Recording Acts*, 22 Mich. L. Rev. 405, 406 (1924) ("first

9       in time was first in right because there was nothing left for the second transferee")).  The equity

10      courts created exceptions to the traditional "first in time, first in right" rule. *Id.* § 92.03, at 98.

11      Under the common law, an earlier claim had priority over a later claim if both claims were legal

12      claims (as opposed to equitable claims). *Id.* § 92.03, at 97.  The same was true if both claims

13      were equitable. *Id.*  BFP status only mattered under the common law where the purported BFP

14      had a legal claim and a competing earlier claim to the property was purely equitable. *Id.*[4]

15      Today, the difference between legal and equitable claims does not matter as much as the

16      policies behind recognizing BFP status (or not) in particular circumstances, and BFP-type

17      exceptions to the common law rule of priority are governed by recording statutes, in any case. *Id.*

18      § 92.03, at 98–99.  Recording statutes are categorized as "race," "notice," or "race–notice"

19      statutes.  *Id.* § 92.08, at 158.  Under notice statutes, an exception to the traditional "first in time"

20      rule is codified for those who give value for an interest in land "without notice or knowledge" of

21      an earlier competing interest. *Id.* § 92.08(b).  Race–notice statutes additionally require the later

22      grantee to record his interest before the earlier grantee. *Id.* § 92.08(c).  Where notice matters, as

23

24      4 The Court disagrees with SFR that US Bank's interest in the property is equitable.  US Bank's
        interest in the Property (the DOT) is legal, as is SFR's (the Trustee's Deed).

1    under notice and race–notice statutes, one who takes title without warranty can be found to have

2    had inquiry notice of prior unrecorded interests (and therefore not qualify as a BFP), because a

3    grantor's refusal to issue standard warranties of title should put a reasonable and prudent person

4    on notice of potential competing interests. *Id.* § 92.09(c)(3)(C), at 191.

5         Nevada has a race–notice statute. *See* Nev. Rev. Stat. § 111.325 ("Every conveyance of

6    real property within this State hereafter made, which shall not be recorded as provided in this

7    chapter, shall be void as against any subsequent purchaser, in good faith and for a valuable

8    consideration, of the same real property, or any portion thereof, where his or her own

9    conveyance shall be first duly recorded.").  In other words, a later-obtained interest can prevail

10   over an earlier-obtained interest in Nevada where the later purchaser has no knowledge of the

11   previous interest and records his interest first.  It is not genuinely disputed that neither of these

12   elements is satisfied here.  SFR had constructive notice of the DOT at the time of the HOA sale

13   because the DOT had been recorded, *see* Nev. Rev. Stat. § 111.315, and the Trustee's Deed was

14   of course not recorded before the DOT.

15        The remaining question is whether SFR is a BFP as against the fact that the superpriority

16   piece of D'Andrea's lien had been extinguished prior to the sale.  That is, SFR argues that

17   because it had no notice of the prior tender of the superpriority piece of D'Andrea's lien, the

18   legal effects of that tender should not be imposed against SFR.  The general BFP rule in Nevada

19   is:

20            Any purchaser who purchases an estate or interest in any real property in
        good faith and for valuable consideration and who does not have actual
21      knowledge, constructive notice of, or reasonable cause to know that there exists
        a defect in, or adverse rights, title or interest to, the real property is a bona fide
22      purchaser.

23

24

Nev. Rev. Stat. § 111.180(1).  Even assuming the issue were whether SFR had notice not only of the DOT but also of the legal possibility that the DOT might survive the HOA foreclosure sale (whether due to the pre-sale tender of the superpriority piece in particular or the legal possibility that the sale might not extinguish the DOT under NRS 116.3116 in general), SFR was not an innocent purchaser.  SFR was on inquiry notice of the continuing vitality of the DOT, especially considering that the sale price was a tiny fraction of the value of the Property and it knew the winning bidder was to take a trustee's deed without warranty. *See Berge v. Fredericks*, 591 P.2d 246, 249–50 (Nev. 1979); 11 Thomas, *supra*, § 92.09, at 163 ("Persons who knew about or could have discovered the existence of prior adverse claims through reasonable investigations should not be protected.").[5]  And any inquiry to Alessi and/or D'Andrea alone was insufficient as a matter of law. *See id.* (noting that "reliance upon a vendor, or similar person with reason to conceal a prior grantee's interest, does not constitute 'adequate inquiry'").  The law was not clear at the time of the sale that the sale would extinguish the DOT at all, superpriority tender or not, and a reasonable purchaser therefore would have perceived a serious risk that it would not.  Indeed, SFR has avoided summary judgment on the issue of gross inadequacy of the sale price under *Shadow Wood* in other cases based precisely on its own proffered expert evidence noting the near certainty of subsequent litigation over the continuing vitality of first deeds of trust and

---

5 By the relevant statute's own terms, the legal conclusiveness of the recitals in a trustee's deed do not protect a purchaser from the imputation of inquiry notice as to any and all defects in the title, but only as to defects concerning "[d]efault, the mailing of the notice of delinquent assessment, [] the recording of the notice of default and election to sell[, t]he elapsing of the 90 days[, and t]he giving of notice of sale." Nev. Rev. Stat. § 116.31166.  Even assuming for the sake of argument that a specific statement in a trustee's deed to the effect that the superpriority portion of an HOA's lien had not been redeemed prior to sale could immunize a purchaser from the ordinary legal effects of such a redemption, the Trustee's Deed here does not contain such a statement, (*see* Trustee's Deed, ECF No. 1-15), and such a statement in this case would have been fraudulent under *Shadow Wood*, because it appears clear that D'Andrea's agent Alessi had received the superpriority piece prior to the sale. *See* 366 P.3d at 1110–13.

the high uncertainty of success on the issue. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, --- F. Supp. 3d ----, 2016 WL 1718374, at *3 (D. Nev. 2016) (Jones, J.) (citing Brunson Report, ECF No. 25-3 in Case No. 2:15-cv-583).  SFR cannot be said to be a BFP as against the DOT under these circumstances.

    **2.    Tender**

    SFR argues that the tender of the superpriority piece subrogated US Bank's predecessor-in-interest to that piece of D'Andrea's lien but did not extinguish that piece of the lien.  The difference doesn't matter here.  All that matters is whether the tender caused the DOT to survive the sale.  It did, regardless of whether the superpriority piece of D'Andrea's lien was thereby extinguished or transferred to US Bank's predecessor-in-interest.  In either case, D'Andrea's sale proceeded only on the subpriority piece it retained, and the DOT survived.  The subrogation issue matters only as to whether the non-party former homeowner now owes US Bank the $288 its predecessor-in-interest was forced to pay D'Andrea to protect its interest in the Property due to the homeowner's default.

    The Court also rejects the arguments that the fact of the tender is unenforceable under NRS 111.010, 106.220, or 106.260 because it was not recorded.  NRS 111.010 defines "conveyance" as any written instrument creating, alienating, assigning, or surrendering an interest in land. *See* Nev. Rev. Stat. § 111.010(1).  The statute says nothing of extinguishment of or subordination of interests occurring by operation of law, and there is no evidence D'Andrea ever gave US Bank's predecessor-in-interest any written instrument surrendering any interest in the Property.  Next, NRS 106.220 concerns "instruments" subordinating or waiving priority as to interests in real property. *See id.* § 106.220.  The statute says nothing of extinguishment of or subordination of interests occurring by operation of law.  Finally, NRS 106.260 provides an

optional mechanism for discharging or assigning a mortgage by annotating the recorded copy of the mortgage in the recorder's presence.  That statute has no application to the present case.

### 3.    Commercial Unreasonableness

As noted, *supra*, the Court will not rule on the *Shadow Wood* or *Levers* issues at this time as between US Bank and SFR.  If necessary to resolve, the Court would likely put those issues to a jury.

### 4.    Unjust Enrichment

In Nevada, the elements of an unjust enrichment claim or "quasi contract" are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant (4) under circumstances where it would be inequitable for the defendant to retain the benefit without payment. *See Leasepartners Corp., Inc. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (citing *Unionamerica v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981) (citing *Dass v. Epplen*, 424 P.2d 779, 780 (Colo. 1967))).  An indirect benefit will support an unjust enrichment claim. *Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992).  Unjust enrichment is an equitable substitute for a contract, and an action for unjust enrichment therefore cannot lie where there is an express written agreement governing the relationship at issue. *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824 (Nev. 1977).

Here, US Bank alleges: (1) it has been deprived of the benefit of the DOT; (2) Defendants have benefitted from the HOA sale; and (3) Defendants have benefitted from US Bank's payment of taxes, insurance, or HOA fees since the time of the HOA sale.  The first two allegations do not support an unjust enrichment claim, but the third does.  Unjust enrichment means more than that the defendant has profited unscrupulously while the plaintiff has been

harmed.  The claim only lies against a defendant who has willingly received the plaintiff's labor or goods without giving anything of equal value in return under circumstances where it would be inequitable not to require restitution therefor.  An unjust enrichment claim requires that the plaintiff has in some way conferred a benefit onto the defendant. *See* Restatement (First) of Restitution § 1 cmt. b (1937) ("A person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage.").  The allegation that US Bank has since the time of the HOA sale paid taxes, insurance, and/or HOA fees as to the Property to SFR's benefit can support an unjust enrichment claim as an alternative to the quiet title claim.  That is, if it turned out that the Trustee's Deed were superior to the DOT, there would be a valid unjust enrichment claim as to these amounts, because they would have been paid by US Bank not for its own benefit but for the benefit of SFR.

SFR argues that the unjust enrichment claim is barred by the voluntary payment doctrine. The doctrine is an affirmative defense that generally prevents recovery of amounts voluntarily paid. *See Nev. Ass'n Servs., Inc. v. Eighth Jud. Dist. Ct.*, 338 P.3d 1250, 1253 (Nev. 2014). "Voluntary" under the doctrine means "*without protest as to its correctness or legality.*" *Id.* (quoting *Putnam v. Time Warner Cable of Se. Wis.*, 649 N.W.2d 626, 632 (Wis. 2002)) (emphasis in *Putnam*).  One defense to the doctrine is when a payment is made in defense of property, i.e., when the payment is made to save one's interest in property. *Id.* at 1256.  Because the doctrine is an affirmative defense, SFR bears the burden of proving it.  If it can, the burden shifts to US Bank to prove an exception applies. *Id.* at 1254.  US Bank of course paid taxes, HOA fees, and insurance as to the Property after the HOA sale (if it did) to protect its claimed

interest in the Property against loss due to tax sale, subsequent HOA sale, or casualty by fire, vandalism, etc.  The only remaining question on summary judgment is whether US Bank has produced any competent evidence as to having actually made any such payments.  It has not.  The Court therefore grants summary judgment to SFR on the unjust enrichment claim.  The claim is moot due to US Bank's success on the alternative quiet title claim, anyway.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 79) is GRANTED.

IT IS FURTHER ORDERED that the Countermotion for Summary Judgment (ECF No. 85) is DENIED.

IT IS FURTHER ORDERED that the Motions to File Excess Pages (ECF Nos. 86, 89) are GRANTED.

IT IS FURTHER ORDERED that the Motions for Summary Judgment (ECF No. 121, 122) are GRANTED IN PART and DENIED IN PART.  US Bank is entitled to offensive summary judgment on its quiet title claim.  SFR is entitled to defensive summary judgment against SFR's unjust enrichment claim.  US Bank's claims for wrongful foreclosure, negligence, breach of contract, misrepresentation, and breach of the covenant of good faith and fair dealing remain.

IT IS SO ORDERED.

Dated this  23rd day of August, 2016.

_____
ROBERT C. JONES
United States District Judge